IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROMAN MARTIN,

Plaintiff,

vs. Case No. 09-1235-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental

impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth

and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On February 17, 2009, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 11-19). Plaintiff alleges that he has been disabled since December 13, 2006 (R. at 11). Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 13). At step one, the ALJ determined

that plaintiff has not performed substantial gainful activity since December 13, 2006, the alleged onset date of disability (R. at 13). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, hypertension, possible trochanteric bursitis, and congenital hip impairment (R. at 14). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After determining plaintiff's RFC (R. at 14), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 17). At step five, the ALJ found that plaintiff can perform other work that exists in significant numbers in the national economy (R. at 18). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III. Did the ALJ err in his finding that plaintiff's carpal tunnel syndrome was not a severe impairment?**

The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this

level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[1] Williams, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c), § 416.912(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a),

---

[1]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

§ 416.913(a). Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

The ALJ noted that the medical evidence indicated bilateral severe medial neuropathies across the carpal tunnel; however the ALJ further found that there is no evidence that this impairment would cause more than a minimal vocationally relevant limitation for at least 12 months to meet the durational requirement. Therefore, the ALJ concluded it was not a severe impairment (R. at 14).

First, plaintiff has failed to cite to any medical opinion evidence stating that the carpal tunnel syndrome resulted in more than a minimal effect on his ability to perform basic work activities. Therefore, plaintiff failed to meet his burden of proof on this issue.

Second, in Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments. The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the

claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Again, in Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that the failure to find that additional alleged impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining plaintiff's RFC, considers the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

In making his RFC findings, the ALJ stated that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence (R. at 14). In light of the fact that the ALJ found other severe impairments at step two, and the absence of any medical evidence that plaintiff's carpal tunnel syndrome has more than a minimal effect on his ability to perform basic work activities for a 12 month period, the court finds no reversible error by the ALJ at step two.

**IV. Are the ALJ's RFC findings supported by substantial evidence?**

The ALJ found that plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), which

> demands the occasional lifting up to 20 pounds and the frequent lifting/carrying up to 10 pounds; standing or walking 6 hours out of an 8 hour workday and sitting 6 hours out of an 8 hour workday with alternating standing and sitting every 30 minutes. The claimant could not perform work requiring overhead reaching with the right upper extremity. In addition, the claimant could not perform work requiring any climbing on ladders, ropes or scaffolds and should avoid all exposure to hazards such as unprotected heights and being around dangerous moving machinery.

(R. at 14).

The ALJ discussed and evaluated plaintiff's testimony and the medical evidence in making his RFC findings (R. at 15-17). The ALJ provided the following explanations for some of his specific RFC findings:

> Due to left hip, right shoulder, bilateral hand and bilateral elbow pain and history of hypertension, it is reasonable to conclude that the claimant is limited to occasional lifting up to 20 pounds and the frequent lifting/carrying up to 10 pounds. For the same reasons, the evidence supports a finding that the claimant could not perform work requiring any climbing on ladders, ropes or scaffolds and should avoid all exposure to hazards such as unprotected heights and being around dangerous moving machinery.
>
> ..........
>
> In more recent progress notes, the claimant was assessed with left hip girdle pain that was likely the mechanical consequence of the leg length discrepancy and possible related to mechanical irritation of the transitional vertebra at L5. A shoe lift was recommended and the claimant was asked to consider a regional injection. (Exhibit l5F) Although

> the claimant testified that use of a cane was suggested, its use was not prescribed or required. (Exhibits 7F, l4F, l5F) Thus, as long as he can alternate standing and sitting every 30 minutes, the evidence supports a finding that the claimant can stand or walk 6 hours out of an 8 hour workday and sit 6 hours out of an 8 hour workday.
>
> ..........
>
> Due to right shoulder pain and limited range of motion, it is reasonable to conclude that the claimant could not perform work requiring overhead reaching with the right upper extremity.

(R. at 16).

Plaintiff argues that the ALJ failed to properly derive an RFC under SSR 96-8p because the ALJ's RFC is not explicitly related to any specific medical evidence or testimony, and the ALJ did not provide any type of reasonable narrative discussion as to how the medical evidence supported his conclusions (Doc. 11 at 11). According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1);

Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

In making his RFC findings, although the ALJ cited to

medical evidence regarding plaintiff's impairments, the ALJ did not cite to any medical evidence which addressed plaintiff's limitations regarding his ability to work. The only medical RFC assessment discussed by the ALJ was that of Dr. Meredith Woolley, who indicated that plaintiff could lift/carry less than 5 pounds, stand/walk for less than 1 hour in an 8 hour day, and sit for less than 1 hour in an 8 hour day (R. at 345-346). However, the RFC assessment also stated that this was Dr. Woolley's first time to evaluate the plaintiff, and indicated that her responses are based on plaintiff's presentation and history on October 23, 2008. Dr. Woolley further noted that plaintiff's symptoms are "way out of proportion to findings, exam and x-ray" (R. at 346). Dr. Woolley concluded by stating that if motivated, she expected plaintiff to have some improvement (R. at 346). The ALJ stated that Dr. Woolley's assessment appeared to be based on plaintiff's subjective complaints and are in excess of the objective findings. Therefore, the ALJ gave this assessment no weight (R. at 17). Based on Dr. Woolley's own qualifications of her opinions in the assessment, the court finds that the ALJ had a reasonable basis to give the opinions in her assessment no weight.[2]

[2]The only other medical RFC assessment in the record was a state agency assessment dated February 21, 2007 and approved by Dr. Parsons (R. at 310-317, 325). However, it was not mentioned in the ALJ's decision, and therefore will not be considered by the court.

In the case of Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007), the ALJ indicated that his RFC findings generally agreed with the determinations made in a state agency RFC assessment. The court indicated that such assessments primarily consist of check-the-box forms with little or no explanation for the conclusions reached. The court held as follows:

> These check-the-box evaluation forms, "standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." Frey v. Bowen, 816 F.2d 508, 515 (10th Cir.1987); see also Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (permitting ALJ to rely on opinions of medical consultants if opinions are supported by evidence in case record). The record shows only a two-to-three-month work restriction imposed on Ms. Fleetwood immediately after her mitral valve replacement surgery. But **no other medical evidence in the record specifically addresses her ability to work. Dr. McGouran did not address her RFC or her ability to work in any of his treatment notes. Those notes are therefore insufficient to draw reliable conclusions about her ability to work**. [footnote omitted] **Dr. Seitsinger, the consulting doctor, who actually physically examined her, did not form specific conclusions regarding her ability to work**. He stated only that she had conversational dyspnea and dyspnea with range of motion testing, both related to her obesity. Also, he noted that she could walk without assistive devices for short distances and could manipulate fine and gross objects. He did not state what effect her panic attacks or anxiety, both of which he assessed, would have on her ability to work. Nor did he indicate her ability to stand or sit during an eight-hour workday or what

> effect her assessed shortness of breath with a history of bronchitis and COPD would have on her ability to work. **To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.**
>
> The ALJ's inability to make proper RFC "findings may have sprung from his failure to develop a sufficient record on which those findings could be based." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir.1994). **The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. R. 96-8p, 1996 WL 374184, at *5**. Because the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel. Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir.1993); accord Hawkins v. Chater, 113 F.3d 1162, 1164, 1168 (10th Cir.1997). Even though Ms. Fleetwood's counsel did not request any additional record development, the need for additional evidence is so clearly established in this record that the ALJ was obliged to obtain more evidence regarding her functional limitations. See Hawkins, 113 F.3d at 1167-68.

Fleetwood, 211 Fed. Appx. at 740-741 (emphasis added). The court stated that the ALJ should consider contacting the treating doctor(s) in order to obtain sufficient evidence upon which to base an RFC finding; if that option does not provide sufficient evidence, the ALJ may order a consultative examination. 211 Fed. Appx. at 741. Because the ALJ's RFC assessment was not based on substantial evidence, the court reversed the district court's

affirmance on this issue and remanded the case with directions to remand to the Commissioner for further proceedings. 211 Fed. Appx. at 741. See Essman v. Astrue, Case No. 09-4001-SAC (D. Kan. Dec. 16, 2009, Doc. 23 at 14-16)(relying on Fleetwood, case remanded when the ALJ either rejected or gave little weight to the opinions of a treatment provider regarding plaintiff’s mental RFC, and there was no other medical opinion evidence in the record which discussed plaintiff’s mental limitations).

In the case of Lamb v. Barnhart, 85 Fed. Appx. 52, 55-57 (10th Cir. Dec. 11, 2003), the ALJ rejected the opinion of Dr. Osborne, a treating physician, that plaintiff could not perform sedentary work, and the ALJ found that plaintiff had the RFC to perform light work. The court held that the ALJ failed to provide legitimate reasons for rejecting the opinions of Dr. Osborne. The court further held that there was no competent medical evidence in the record to support the ALJ’s light work determination because: (1) the RFC assessment forms that were prepared by the two non-examining agency physicians were found not to constitute substantial evidence since they are not accompanied by thorough written reports or persuasive testimony, and (2) except for Dr. Osborne, none of the other doctors who examined the claimant specifically addressed or defined the claimant’s exertional limitations (ability to sit, stand, walk, lift, carry, push, and pull) or her nonexertional limitations

(reach, handle, stoop, crouch, climb, etc.). As a result, even if the ALJ determined on remand that he is not required to give controlling weight to the opinions of Dr. Osborne, the ALJ cannot then simply conclude, as it appeared he did in the decision under review, that the claimant is therefore capable of light work. Instead, the ALJ must evaluate and make specific findings as to claimant's physical RFC, and the findings must be supported by substantial evidence. The court held that the ALJ must ensure that a sufficient record exists to evaluate the claimant's exertional and nonexertional limitations. The court noted that while the ALJ is not limited to considering only medical evidence, the ALJ's duty to develop the record may include obtaining additional evidence from a treating physician or ordering a consultative examination if the record does not otherwise contain sufficient evidence upon which to base an RFC finding.

In the case before the court (Martin), the ALJ did discuss the medical evidence, and indicated that he was imposing certain limitations based on various impairments mentioned in the medical and other evidence. However, as in Fleetwood, in which various medical impairments were also mentioned in the medical reports, none of the medical evidence relied on by the ALJ specifically addressed plaintiff's ability to work. It is not at all clear to the court why the impairments in the medical evidence noted by

the ALJ would provide a reasonable basis to support the limitations found by the ALJ, or whether they would provide a reasonable basis to support either greater or lesser limitations impacting plaintiff's ability to work. For example, the ALJ, after summarizing the medical evidence, found that plaintiff, so long as he can alternate standing and sitting every 30 minutes, can sit for 6 hours and stand or walk for 6 hours in an 8 hour workday. However, the ALJ failed to explain how the evidence supported the need to alternate only every 30 minutes, or why an alternation every 30 minutes would allow plaintiff to sit for 6 hours and stand or walk for 6 hours in an 8 hour workday.[3]

As in Lamb, none of the other medical records relied on by the ALJ in the case before the court specifically addressed or defined plaintiff's exertional or nonexertional limitations. Thus, even though the ALJ provided a proper basis for rejecting the opinions of Dr. Woolley, there is no medical evidence in the record that clearly supports the ALJ's RFC findings. As in Fleetwood and Lamb, the ALJ in the case before the court had very

[3]The ALJ found that plaintiff could perform certain types of light and sedentary work (R. at 18). According to SSR 96-9p, the erosion of the sedentary work base will depend on the frequency of the need to alternate sitting and standing and the length of time needed to stand. Therefore, the "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." 1996 WL 374185 at *7. For this reason, it is important for the ALJ to be able to provide a reasonable explanation for a finding that plaintiff needs to alternate every 30 minutes, as opposed to requiring more frequent alternation.

little or no medical evidence directly addressing plaintiff's RFC (except for medical opinion evidence which the ALJ provided a reasonable basis for rejecting). Without sufficient evidence to support his RFC findings, the court concludes that the ALJ was not in a position to make an RFC determination. On remand, the ALJ should consider obtaining an evaluation of the plaintiff's functional limitations from her treating physicians and/or obtain a detailed examination from a consulting physician which addresses plaintiff's functional limitations. Fleetwood, 211 Fed. Appx. at 741; Lamb, 85 Fed. Appx. at 57.

Plaintiff also alleges error because the ALJ failed to consider his need for a cane to maintain his balance. In his decision, the ALJ indicated that plaintiff stated that a family nurse practitioner suggested that he use a cane, but that it was not prescribed (R. at 15). Although this issue can be addressed when the case is remanded, the court would note that SSR 96-9p states that:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.

SSR 96-9p, 1996 WL 374185 at *7.

**V. Did the ALJ base his decision on vocational expert (VE) testimony which varied widely from the Dictionary of Occupational**

**Titles (DOT) in violation of SSR 00-4p?**

SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the DOT [Dictionary of Occupational Titles] (including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved. 2000 WL 1898704 at *1. In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work. Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled. At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency. If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. 2000 WL 1898704 at

*2.

Plaintiff’s RFC included a limitation that he could not perform work requiring overhead reaching with the right upper extremity (R. at 14); this limitation was reflected in the hypothetical question to the VE (R. at 43). At the hearing, the VE testified that the DOT defined reaching as any extension of the arm, including overhead reaching (R. at 50-51). The VE testified that the jobs he identified did not require overhead reaching (R. at 51). Plaintiff notes that the jobs provided by the VE require the ability to reach frequently (Doc. 15 at 4). Plaintiff argues that a clear discrepancy exists between the VE testimony and the DOT, and that the ALJ failed to elicit a meaningful explanation for the discrepancy (Doc. 11 at 17-19).

In the case of Segovia v. Astrue, 226 Fed. Appx. 801, 804 (10th Cir. March 23, 2007), the court held as follows:

> Both the ticket-taker and cafeteria-attendant positions require...“frequent” reaching, see SCO §§ 09.05.02, 09.05.08; Aplt.App. at 439, 446, while Ms. Segovia is limited to occasional overhead reaching. For purposes of the SCO, however, “reaching” is defined as “[e]xtending hand(s) and arm(s) in any direction.” SCO at C-3 (emphasis added). **The SCO does not separately classify overhead reaching. Thus, under the SCO, even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching. The VE was aware of Ms. Segovia's limitations on overhead reaching, and he testified both that she could perform the jobs he identified and that his opinion of the jobs open to her was consistent with**

> **the DOT's specifications. Aplt.App. at 391-92, 395. In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case.** See Carey v. Apfel, 230 F.3d 131, 146 (5th Cir.2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, ... the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.... [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation."). Further, the DOT descriptions for cafeteria attendant and ticket taker do not indicate that these jobs predominantly involve overhead reaching rather than other types of reaching. See DOT §§ 311.677-010, 344.667-010; Aplt.App. at 437, 445.

(emphasis added).

Although plaintiff indicated that certain jobs identified require frequent reaching, plaintiff did not argue or cite to any authority indicating that these jobs require overhead reaching. The SCO does not separately classify overhead reaching. Thus, under the SCO, even a job requiring frequent reaching does not necessarily require overhead reaching. The VE was informed that plaintiff was limited to no overhead reaching with the right upper extremity. The VE indicated that the Dictionary of Occupational Titles (DOT) does not specify overhead reaching, but reaching in any direction (R. at 50-51). The VE testified that the jobs he identified would not require overhead reaching based

on his own observations of those jobs (R. at 51). As the court held in Segovia, in these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case. Therefore, the court finds no error on this issue. For the same reason, the court finds no error in the VE's testimony that, although the DOT does not set forth information on the frequency and schedule of rest breaks, the ability to use a foot stool, and position alternation, his testimony on those matters is based on his 17 years of providing job placement (R. at 46).

Plaintiff also takes issue with the rationale behind the VE's testimony regarding the number of jobs available (Doc. 11 at 17). At the hearing, the VE testified that his work is done in the midwest region of the United States, and that his national numbers are based on data collected from the U.S. Department of Labor (R. at 48). The court has reviewed the transcript and finds that plaintiff's counsel was given adequate opportunity to question the VE regarding the basis for his testimony (R. at 46-52). The ALJ found that plaintiff was qualified to testify as a VE (R. at 43). The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). In light of the testimony of the VE, and the lack of any contrary evidence

presented by the plaintiff, the court finds that substantial evidence supports the findings of the ALJ at step five, which relied on the testimony of the VE.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 28th day of June, 2010, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge